FREDERICK SCHLANGER, Appellant, *v.* SIGMUND HEYMAN, Respondent.

First Department, December 20, 1918.

**Sale — action for breach — denial of making of contract by seller — trade usage or custom — when evidence as to seller's custom in relation to confirming orders not admissible.**

Where, in an action to recover damages for an alleged breach of a contract for the sale of merchandise by defendant to plaintiff, the defendant denied any knowledge of the making of the contract, repudiated the authority of his alleged agent, and the issue as to the making of said contract was very sharply contested, it was reversible error to admit testimony as to defendant's course of business in relation to confirming orders received by him, especially where it was not sought to prove any general trade usage or custom and where it was not attempted to be shown that plaintiff's assignor had any knowledge of defendant's methods in the conduct of his business.

APPEAL by the plaintiff, Frederick Schlanger, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 9th day of November, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying plaintiff's motion for a new trial made upon the minutes.

*Joseph Gans* of counsel [*C. Arthur Jensen* with him on the brief; *Gans, Davis & O' Neill*, attorneys], for the appellant.

*Walter Underhill* of counsel [*Merrill, von Dorn & Rubinger*, attorneys], for the respondent.

DOWLING, J.:

This action was brought to recover damages for an alleged breach of a contract for the sale of merchandise by defendant to plaintiff. The defendant denied any knowledge of the making of the agreement in question, repudiated the authority of Berkman, his alleged agent, claimed the sale had never been reported by Berkman to defendant or any one in his employ, denied that there was any record of the sale in his office and was allowed to prove his usual course of business

in relation to confirming orders received by him. There was a direct conflict of testimony as to whether or not the order ever had been in fact brought to defendant's attention, and there was considerable evidence, both oral and written, upon that sharply contested issue. Over plaintiff's objection and exception, defendant was allowed to testify in detail as to his course of conduct after he received an order, which was that as soon as he got an order from a salesman, they took it but did not accept the order until they mailed the customer a confirmation order, which had been his method of dealing ever since he had been in business. One of these confirmation orders was then received in evidence and defendant was allowed to testify in detail as to how he filled it in and with what particulars and further to testify that it was then mailed in duplicate to the customer who signed it and returned one copy, retaining the other. A sample form of the letter intended to be signed by the customer was also received in evidence and defendant testified that neither of these blanks had been sent to plaintiff's assignor. In its charge to the jury the trial court referred to the testimony on defendant's behalf " as to the course of business as to the confirmation of sales."

The admission of the testimony as to defendant's manner of conducting his individual business was error. It was not sought to prove any general trade usage or custom, nor was it attempted to be shown that plaintiff's assignor had any knowledge of defendant's methods in the conduct of his business. As was said in *Walls* v. *Bailey* (49 N. Y. 474): " No usage is admissible to influence the construction of a contract unless it appears that it be so well settled, so uniformly acted upon, and so long continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference thereto. (See *Rushforth* v. *Hadfield*, 7 East, 224.) There must be some proof that the contract had reference to it, or proof arising out of the position of the parties, their knowledge of the course of business, their knowledge of the usage, or other circumstance from which it may be inferred or presumed that they had reference to it. [*Bodfish* v. *Fox*, 23 Maine, 90, 96.] " And the court at page 475 quoted with approval the holding in *Caldwell* v. *Dawson* (4 Metc. [Ky.] 121), that " it must appear that the party had

actual knowledge of the usage, or the evidence must be such as to clearly authorize the presumption that he had knowledge of it. And further, that the fact that one party had knowledge of the usage, and supposed that it would enter into the contract, is not sufficient." To the same effect is *Rickerson* v. *Hartford Fire Ins. Co.* (149 N. Y. 307).

An examination of the record satisfies us that the issue as to the making of the agreement in question, which had been sharply contested, was too close to permit us to say that the error assigned could be disregarded, as not having affected the substantial rights of the plaintiff. The erroneous testimony may well have influenced the jury and led to their finding particularly as it was adverted to in the charge of the court.

The judgment and order appealed from must, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., SMITH, SHEARN and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.